IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

DAVID A. WHITAKER,                    )
                                      )
              Plaintiff,              )
                                      )
        vs.                           )         Civil No. 2020-24
                                      )
JAMES C. MARTIN,                      )
                                      )
              Defendant.              )
                                      )
_____)

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff David A. Whitaker's "Motion for Leave to Amend the Complaint." [ECF 29]. Defendant James C. Martin filed an opposition and plaintiff replied. [ECFs 36, 37].

## I.      BACKGROUND

Whitaker, who is from Massachusetts, claims that on or about December 18, 2019, he and Martin entered into a contract for the lease of Martin's[1] property on St. Thomas.[2] Compl. [ECF 1] ¶¶ 4, 5, 7. According to Whitaker, Martin agreed to rent the property to him for 60 months at a monthly rate of $9,650.00. Id. ¶ 8. Whitaker contends that the lease gave him the "Right of First Refusal," in the event the property was put up for sale during the five-year lease period. Id.

On February 26, 2020, Martin sent Whitaker a demand letter seeking $23,547.34 to cover outstanding rent, utilities, and maid service. [ECF 1-3] at 1. The letter stated that Whitaker had

---

[1] In the Complaint, Whitaker identifies Ginger Martin, James Martin's wife, as a non-party and refers to both collectively as "Martin." Compl. [ECF 1] ¶ 6. When the Court refers to "Martin," it is referring solely to James Martin.

[2] The property is identified in the Complaint as "Villa Alhambra, St. Peter, located at 3A-20 and 21 Estate Peter, St. Thomas, Virgin Islands." Compl. [ECF 1] ¶ 7.

breached the lease by having dogs on the property, and by making unauthorized structural and cosmetic changes to the property.   *Id.*   Finally, the letter indicated that if Whitaker failed to pay the outstanding amount and return the property to its original condition within three days, Martin would terminate his tenancy.   *Id.*

On March 1, 2020, Martin changed the locks on the property buildings and, according to Whitaker, forbade him from recovering certain possessions, including medication and cash. Compl. [ECF 1] ¶ 11.

Whitaker asserts six counts in the Complaint:  (1) breach of contract, (2) fraud in the inducement, (3) fraud in the factum, (4) violation of the Fair Debt Collection Practices Act, (5) negligence, and (6) intentional infliction of emotional distress.  *Id.* ¶¶ 67-97.   In the instant motion, Whitaker seeks to add the James Clevenger Martin Company ("the Company") as a defendant.   [ECF 29] at 1.   In addition, Whitaker seeks to withdraw his negligence and intentional infliction of emotional distress claims and add claims for (1) breach of the duty of good faith and fair dealing, (2) promissory estoppel, (3) unjust enrichment, and (4) quantum meruit. [Proposed] First Am. Compl. ("PFAC") [ECF 29-2] ¶¶ 97-122.   Lastly, Whitaker proposes general revisions to the original complaint.   [ECF 29] at 1.

## II.   LEGAL STANDARDS

A.   <u>Motions to Amend Under Federal Rule of Civil Procedure 15(a)</u>

Rule 15(a) provides that leave to amend a complaint should be freely given when justice so requires.   However,

> [w]hile Rule 15(a) provides that leave to amend should be "freely given," a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the

> amendment would be futile, or (3) the amendment would prejudice
> the other party.

*Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

"In the Third Circuit, delay alone does not justify denying a motion to amend." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F. 3d 267, 273 (3d Cir. 2001)). Rather, the delay must either be undue, such that it places "an unwarranted burden on the court," or it must be prejudicial, such that it places "an unfair burden on the opposing party." *Synthes*, 281 F.R.D. at 225 (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). "Implicit in the concept of undue delay is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." *Synthes*, 281 F.R.D. at 225 (quotation marks omitted). Thus, in assessing delay, the court must balance any imposition or prejudice caused by the delay against the plaintiff's reasons for the delay. *Id.* at 225-26 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)).

"Futility" denotes that "the complaint, as amended, would fail to state a claim upon which relief may be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Thus, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as applies under [FRCP] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). In other words, the court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." 6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2019).

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment," and such prejudice must be substantial or undue. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (quotation marks omitted)). Thus, the defendant "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). Courts evaluate prejudice "by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum." *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2017 WL 4404565, at *2 (D.N.J. Oct. 4, 2017). Ultimately, whether to grant leave to amend lies within a court's discretion. *Pennsylvania Emps. Ben. Tr. Fund v. Zeneca, Inc.*, 499 F.3d 239, 252 (3d Cir. 2007).

## III.   DISCUSSION

A.   <u>Whether Whitaker's Motion is Timely</u>

On July 31, 2020, the undersigned entered a Trial Management Order setting a September 30, 2020 deadline for motions to amend the pleadings or add new parties. [ECF 23] at 1. Whitaker's motion to amend was filed on September 30, 2020 and is therefore timely.

B.   <u>Whether the Proposed Additional Claims are Futile</u>[3]

1.   <u>Breach of the Duty of Good Faith and Fair Dealing</u>

---

[3] Although Martin argues in his opposition that the claims asserted in the original complaint (fraud in the inducement, fraud in the factum, and violation of the Fair Debt Collection Practices Act) are also deficient, these issues are not before the Court; they are the subject of a separate pending motion. For purposes of this motion, the Court focusses solely on the futility of the new claims in the PFAC.

"In the Virgin Islands, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Arvidson v. Bucher*, 2019 WL 4307580, at *23 (V.I. Super. Sept. 10, 2019) (quotation marks omitted). Breach of the implied covenant occurs when one party acts in a way that deprives another party of the benefits for which it bargained. *Id.* To state a claim for breach of the implied covenant of good faith and fair dealing, "a plaintiff must [allege] acts by the defendant that amount to fraud, deceit, or misrepresentation." *Stapleton v. WenVI, Inc.*, 2014 WL 3765855, at *3 (D.V.I. July 30, 2014) (quotation marks omitted). "To successfully allege an act of fraud or misrepresentation, a complainant must demonstrate: (1) a knowing misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of that reliance." *Id.*; *but see Remak v. Virgin Islands Water & Power Auth.*, 2017 WL 3122642, at *2, 4 (V.I. Super. July 21, 2017) (concluding that the standard for proving a claim for breach of the implied covenant of good faith and fair dealing in the Virgin Islands remains unclear because the Virgin Islands Supreme Court has not clarified whether a *Banks* analysis must always be performed in order to establish binding precedent).

Here, Whitaker seeks to add a claim of breach of the implied covenant of good faith and fair dealing against Martin. PFAC [ECF 29-2] ¶¶ 97-104. Martin opposes the addition of such a claim on the grounds that it is futile. [ECF 36] at 10. According to Martin, because all the allegations supporting this claim "relate to the negotiation phase and not the performance phase," the addition of this claim should not be allowed. *Id.*

In Count V of the PFAC, which purports to state the claim for breach of the duty of good faith and fair dealing, plaintiff alleges the following:

98.     Whitaker responded to Martin's advertisement of his property for rent.

99.     Martin represented that the Property was in good condition and fit for occupancy.

100.    At the time Martin made those representations Martin knew that the Property was moldy and the mattresses were moldy, and knew that the interior of the property flooded with normal amounts of rainfall.

101.    Martin failed and refused to disclose any defects to Whitaker during their negotiations.

102.    Martin insisted on a premium price for the rental, a price that is not merited considering the known defects.

PFAC [ECF 29-2] ¶¶ 98-102.   Standing alone, these allegations would be inadequate because they relate to events that occurred prior to the existence of their contract.   In other words, because these allegations relate to events that occurred outside the temporal scope of the performance and enforcement of the lease agreement, such amendment would be futile.   *See Grand Union Supermarket of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 46 V.I. 505, 515-16 (D.V.I. 2005) (dismissing plaintiff's claim for breach of the duty of good faith and fair dealing because the facts alleged related to actions taken before the contract was entered, rather than facts related to the "actual performance" of the contract).

However, there are other allegations in the complaint which focus on events that occurred after the contract was formed.   When taken together, these allegations satisfy the pleading requirements of a claim for breach of the duty of good faith.   For example, Whitaker alleges that on January 16, 2020, Martin sent him a letter in which he tells Whitaker to make certain repairs to the property (replacing ceiling tiles in two bathrooms and repainting a fence) at Whitaker's expense.   *See* PFAC [ECF 29-2] ¶ 46.   Whitaker then alleges that he responded to Ginger Martin

that same day, expressing his surprise at being asked to make and pay for improvements to their property, especially since the property required extensive repairs simply to be rendered habitable. *See id.* ¶ 48.   In sum, because these allegations and others are incorporated into the count at issue, the Court finds that the addition of this claim is not futile.

    2.    Promissory Estoppel

    The Virgin Islands Supreme Court has not yet determined the soundest rule for the Territory regarding the pleading requirements for a promissory estoppel claim.   Nor has any court within the Territory conducted a *Banks* analysis on this issue.   The Court therefore does so now.

    First, the Court notes that there is a paucity of cases in the Territory that deal with claims of promissory estoppel.   Those that do, reference Section 90 of the Second Restatement of Contracts.   *See, e.g.*, *First American Development Group/Carib, LLC v. WestLB AG*, 55 V.I. 316, 330-31 (V.I. Super. 2011); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 560-61 (D.V.I. 2004) (applying Virgin Islands law).   Section 90 provides as follows:   "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.   The remedy granted for breach may be limited as justice requires."   Restatement (Second) of Contracts § 90.

    Second, the Court notes that most other courts have also adopted this standard.   *See* 23 Suffulk J. Trial & App. Advoc. 1 2017-18 at *59 ("Section 90 is either adopted or relied upon in almost all jurisdictions . . . .").   Given both the Territory's previous reliance on the Second Restatement of Contracts as well as its continued use by a majority of the states, the Court finds that this approach represents the soundest rule for the Virgin Islands.

In the PFAC, Whitaker alleges the following:

> 106.   The parties agreed to enter into a five-year Lease Agreement.
>
> 107.   Whitaker relied upon Martin's promise that he would have access to the Property for five years.
>
> 108.   Whitaker's reliance on the promise of five years of access to the Property was reasonable particularly considering that the promise was memorialized in the Lease Agreement.
>
> 109.   Whitaker incurred significant expense in relying on the promise of a five-year Lease Agreement, including the expense of installing fiber internet, with Martin's permission.
>
> 110.   Martin is liable in damages based on PROMISSORY ESTOPPEL.

PFAC [ECF 29-2] ¶¶ 106-110.   Whitaker thus satisfies his pleading burden.[4]

3.   <u>Unjust Enrichment/Quantum Meruit</u>

To state a claim for unjust enrichment under the law of the Virgin Islands,[5] a plaintiff must allege:  "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff."   *Walters*, 60 V.I. at 779-80.

Here, Whitaker seeks to add a claim of unjust enrichment against Martin and the Company. PFAC [ECF 29-2] ¶¶ 111-115.   Martin opposes the addition of this claim on the grounds of futility.   [ECF 36] at 12-14.   Addressing the claim against him in his individual capacity, Martin

---

[4]   Martin argues that Whitaker's proposed claim for promissory estoppel is barred either under the gist of the action doctrine or because there exists a valid contract between the parties.   [ECF 36] at 11-12.   These arguments, however, go to the merits of the proposed claim and not to the sufficiency with which it was pled.

[5]   A claim for unjust enrichment is the same as one seeking quantum meruit.   *Walters v. Walters*, 60 V.I. 768, 776 (V.I. 2014).

argues that it is alternatively precluded under the "barred by contract rule," or the "gist of the action doctrine." *Id.* at 12-13. Regarding the claim against the Company, Martin contends that the PFAC does not allege that the Company owned the property and therefore was unjustly enriched by Whitaker's improvements. *Id.* at 13. Martin further contends that the PFAC does not allege that Whitaker ever paid the Company any money and therefore the Company could not have been unjustly enriched by the receipt of rental fees and other charges. *Id.* at 13-14.

In the PFAC, Whitaker alleges the following:

48.    . . . We paid for services such as maid service and provisioning that we are still not receiving . . . .

* * *

. . . And what about the services included in the lease that you have not provided? The maid service, the DISH tv (which does not work), the weekly cleaning of the pool and spa (which does not function) . . . .

* * *

51.    On February 2, 202[0], Whitaker complained about being overcharged for use of the guest house and for being charged for mai[d] service that was not provided. . . .

* * *

112.    Whitaker paid significant sums to Martin and the Company for rent and other charges billed to him, even though the underlying services for which he was billed were not provided.

113.    Whitaker expended significant sums in remediating and improving the Property.

114.    All payments made by Whitaker were made to Martin and/or the Company.

115.    Martin and the Company are liable to Whitaker for their UNJUST ENRICHMENT.

* * *

117.    The Property was in need of substantial remedial repairs.

118.    Martin agreed to have Whitaker make many of those repairs.

119.    Whitaker hired laborers and obtained supplies so that the repairs could be performed.

120.    Both the laborers and the supplies were paid for by Whitaker, with the expectation that he would be occupying the Property for five years.

121.    Martin, using self-help, changed the locks and evicted Whitaker after approximately two months.

122.    Martin is liable to Whitaker for the cost of labor and supplies in QUANTUM MERUIT.

PFAC [ECF 29-2] ¶¶ 48, 51, 112-115, 117-122.  At this stage, the Court is not persuaded that Whitaker's proposed addition of a claim for unjust enrichment as to either Martin or the Company would be futile.  Therefore, both will be allowed.

As to Martin, Whitaker satisfies his pleading burden by alleging that (1) Martin was enriched; (2) Martin's enrichment came from Whitaker's lease payments, payments for other services, and improvements to the property; (3) Martin was aware of the payments as they were made to him; and (4) because Whitaker made these improvements to the property with the expectation that he would be occupying it for five years, and because he was evicted after approximately two months of occupancy, Whitaker should be reimbursed the money spent on labor and supplies to make the improvements.[6]

---

[6]  The Court need not address Martin's arguments regarding the barred by the contract rule and gist of the action doctrine because these arguments go to the merits of the proposed claim and not the sufficiency under which it was pled.

As to the Company, although the allegations in the PFAC are thread-bare, Whitaker satisfies his pleading burden by alleging that:   (1) the Company was enriched; (2) the Company's enrichment came from its receipt of Whitaker's lease payments and payments for other services; (3) the Company was aware of the payments because it, through Martin, issued invoices to Whitaker and received Whitaker's payments; and (4) because Whitaker paid for additional services that were not provided, the circumstances are such that in equity or good conscience the Company should return the money to Whitaker.

### IV.    CONCLUSION

Accordingly, the premises considered, the following is hereby ORDERED:

(1) Whitaker's "Motion for Leave to Amend Complaint" [ECF 29] is GRANTED;

(2) Whitaker shall file his First Amended Complaint no later than December 23, 2020;

(3) Whitaker shall promptly obtain and serve summons on the Company; and

(4) defendants shall respond to the First Amended Complaint in accordance with the applicable rules.

**Dated:** December 18, 2020                              S\ _____
                                                                                    **RUTH MILLER**
                                                                                    United States Magistrate Judge